IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 12 Cr. 934 (RA) |
| | |
| | The Hon. Ronnie Abrams |
| v. | |
| | |
| VANESSA BANDRICH, | |
| | |
| Defendant. | |

**DEFENDANT VANESSA BANDRICHS' MEMORANDUM OF LAW**

SEAN M. MAHER
*Counsel for Defendant Vanessa Bandrich*

The Law Offices of Sean M. Maher, PLLC
233 Broadway, Suite 801
New York, NY 10279
(212) 661-5333
(212) 227-5808 fax

**Preliminary Statement**

Vanessa Bandrich, by undersigned counsel, respectfully submits this memorandum of law in support of Ms. Bandrich's (a) motion to suppress evidence derived from the search of the law offices of Bandrich and Associates and (b) motion to join in the motions of her co-defendants.

**MOTION TO SUPPRESS EVIDENCE**

**I.      Factual Background**

The indictment alleges that Ms. Bandrich conspired with others to commit immigration fraud by submitting "at least two hundred fraudulent asylum applications on behalf of Chinese aliens."  Ind. ¶ 6 (attached as Exhibit A).

On December 18, 2012, Magistrate Judge Netburn issued an amended search warrant for the premises located at 11 East Broadway, Suite 4D, New York, New York.  The location was the law offices of Bandrich and Associates, Inc. ("Bandrich and Associates" or "law firm").  The search warrant application and the warrant itself listed an expansive number of items to be search, including all physical and electronic client files.  Exhibit B.

The affidavit of FBI Special Agent Christopher DeGraff, which is the sole affidavit submitted in support of the search warrant, refers to only one investigative source, cooperating witness ("CW-1"), who allegedly had knowledge of the conspiracy.  Exhibit B – Affidavit of Christopher DeGraff ¶ 7.

Under authority of the search warrant, the government seized hundreds of physical and electronic client files from Bandrich and Associates.  The government did not seek to have a special master review the seized materials to prevent any piercing of the attorney-client privilege.

Instead, the government conducted the review of all of the materials by using an FBI "Filter Agent," who was to review whether the materials contained "indicia of fraud, pertain[ed] to the filing of false asylum application, or otherwise constitute[d] evidence, contraband, fruits, or instrumentalities of the offense."  The Filter Agent was authorized to turn over such materials directly to the prosecution team.  The government also sought and received permission under the search warrant to conduct an expansive search of any electronic and computer files found within the law firm.

## II.     Legal Argument

The Fourth Amendment's Warrant Clause provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Searches undertaken without a warrant, however, "are *per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967); *see also Terry v. Ohio,* 392 U.S. 1, 20 (1968) ("police must, whenever practicable, obtain advance judicial approval of searches, and seizures through the warrant procedure.").  The Second Circuit permits warrants authorizing the seizure of all records of a business when the business is "permeated with fraud." *National City Trading Corp. v. United States,* 635 F.2d 1020, 1026 (2d Cir. 1980) (commodities fraud); *see also United States Postal Service, C.E.C. Services,* 869 F.2d 184, 187 (2d Cir. 1989) (telemarketing fraud). As described below, searches of a law office are different than searches of non-legal businesses because of issues of attorney-client privilege and confidence.

A.  **The Search Warrant Affidavit Did Not Provide Probable Cause to Support the Issuance of the Search Warrant**

DeGraff's search warrant affidavit did not provide probable cause to support the issuance of the search warrant. The following is what DeGraff proffered in his affidavit in regard to whether there was a factual basis to support the issuance of the search warrant of Bandrich and Associates:

> 7. My knowledge of the scheme is based in part on my conversations with cooperating witnesses who have assisted the FBI in its investigation of immigration fraud by Bandrich and Associates. In particular, I have spoken with an individual, ("CW-1")(footnote omitted) who, at the direction of the FBI, posed as an asylum applicant at the law firm in or about 2012. In addition to the cooperating witness providing me with knowledge of the scheme described above and charged in the relevant indictment, the CW-1 also informed me of evidence of the scheme likely to be found at the PREMISES. For instance, I have learned the following, in substance and in part, based on the conversations I have had with CW-1:
>
>> a. CW-1 has informed me that while he posed as an asylum applicant in need of the help of the law firm, he visited the PREMISES on multiple occasions. He has informed me that on his initial visit to the PREMISES, he met with a paralegal at the law firm and told the paralegal that he had been in the United States for ten years and was interested in applying for asylum status. The paralegal informed CW-1 that he could not seek asylum status if he has been in the United States for more than a year, therefore he would need to provide documents to USCIS falsely stating that he was living in China, his country of origin, within the last year. The paralegal then used a computer on the PREMISES to type an affidavit claiming that CW-1 had been seen in China within the past year. The paralegal gave the document to CW-1 and told him to find someone who was a naturalized citizen of the United States, but had traveled to China within the past year, to sign the affidavit, falsely claiming that he/she had met CW-1 while he/she was visiting China.
>
>> b. CW-1 has informed me that on another visit to the law firm on the PREMISES he met with SUNNY YANG, a/k/a Ms. Yang," the defendant, who worked as a paralegal at the law firm. During that visit Ms. Yang handed CW-1 a typed document containing a persecution story, falsely claiming that CW-1 had been persecuted in China for being a follower of Falun Gong. Ms. Yang instructed CW-1 to copy the story in his own hand writing while sitting in an office on the PREMISES.

3

Exhibit B - DeGraff Affidavit ¶ 7.

The information provided by DeGraff was insufficient to establish probable cause to support the issuance of the search warrant. There was no assertion whatsoever that any attorney at the law firm had any knowledge of CW-1 or that any attorney interacted in any way with CW-1, either directly or through a subordinate. Instead, DeGraff proffered that CW-1 described one interaction with an unnamed paralegal at an undisclosed date, presumably sometime in 2012, in which the paralegal typed a document stating falsely that CW-1 had been seen in China within the last ten years and one interaction with paralegal Sunny Yang on an undisclosed date in which Ms. Yang allegedly instructed CW-1 to copy down a false persecution story. These two undated interactions with paralegals at the law firm are insufficient to establish that the law firm itself or any attorneys or any other paralegals were engaged in the charged criminal conspiracy. The facts proffered by DeGraff did not support the expansive and invasive search of all of the physical and electronic client files as delineated in the search warrant and DeGraff's affidavit.

Ms. Bandrich relies upon all of the legal authority and arguments raised by co-defendant Feng Ling Liu and hereby incorporates by reference all of the legal authority and arguments raised in Ms. Liu's memorandum of law.

### B. The Government Unlawfully Seized and Searched Privileged Attorney-Client Material

While is well established that "communications that otherwise would be protected by the attorney-client privilege . . . are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct," *United States v. Rivera*, 837 F. Supp. 565, 568 (S.D.N.Y. 1993) (quoting *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1038 (2d Cir.1984)), the government bears the burden of showing "probable cause to

believe that the communications of counsel were intended in some way to facilitate or to conceal the criminal activity." *Id.* at 568-569 (quoting *In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir.1986)*). In this case, the government would have "to show that there was probable cause to believe that in each instance (1) the communications were elicited as part of an ongoing scheme to commit a fraud, and (2) the client was aware at the time of the communication that he was participating in a fraud." *Id.* at 569 (citing *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1038)).

The government is unable to making the requisite showing under *Rivera*. The DeGraff affidavit does not provide any assertion that any attorney in the law firm interacted with CW-1, directed any paralegal at the firm to commit a fraud with CW-1, or approved, either directly or tacitly, of the actions of the two paralegals. There is no showing that any attorney in the law firm had any knowledge whatsoever of any illegal behavior of the two paralegals. The government did not proffer any facts at all to suggest that the singular and isolated actions of the two paralegals were part of an ongoing criminal scheme at the law firm.

The DeGraff affidavit also is devoid of any assertion of fact that an attorney at Bandrich and Associates engaged in any communication with an actual client as a part of an ongoing scheme to commit fraud. There is merely the reference to the single undated interaction between one unnamed paralegal and CW-1 and the single undated interaction between paralegal Yang and CW-1. There is no assertion that any actual client of the law firm was aware at the time he or she communicated with the law firm that the client was participating in a fraud. Without a more substantial factual predicate, the two undated interactions of CW-1 referenced in the DeGraff affidavit are insufficient to overcome the protected nature of the seized materials.

C.   **The Government's Use of an FBI "Filter Agent" Instead of an Independent Special Master Has Led To an Irreparable Breach of the Attorney-Client Privilege, Necessitating Suppression of All Legal Materials Seized by the Government**

Instead of requesting an independent special master to review privileged and confidential client attorney-client materials and attorney work product, the government sought and received permission from the Magistrate Judge to have an FBI "Filter Agent" conduct the initial review off all of the non-electronic materials seized from the law firm.  The government also sought and received permission from the Magistrate Judge to have the FBI "Filter Agent" along with an unnamed "computer technician" conduct the initial review of all of the electronic and computer-related materials seized from the law firm.  This highly questionable practice should have been avoided.

Judge Brieant cautioned against the government's use of a "Chinese Wall" to evaluate whether materials seized from a law firm are protected by attorney-client privilege or not.

> Resisting, as we do with great difficulty, the temptation to plagiarize, and take for our own the racist wisecrack about the Chinese Wall, and its inevitable apertures, found in *United States v. Sapere*, 531 F.2d 63, 66 (2d Cir.1976), this Court notes that reliance on the implementation of a Chinese Wall, especially in the context of a criminal prosecution, is highly questionable, and should be discouraged. The appearance of Justice must be served, as well as the interests of Justice. It is a great leap of faith to expect that members of the general public would believe any such Chinese wall would be impenetrable; this notwithstanding our own trust in the honor of an AUSA. Furthermore, in a case such as this the Chinese Wall attorney to perform the search required the physical assistance of agents, laborers, truckmen and others not bound by the ethical considerations which affect a lawyer. Those on the Mongol side of the Wall may well access the same information from other sources, and have difficulty convincing a defendant or the public that the information did not pass over or through the Wall.

*In Re Search Warrant For Law Offices Executed On March 19, 1992 And Grand Jury Subpoena Duces Tecum Dated March 17, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994).

Instead of relying upon an FBI "Filter Agent," the government should have requested that the Magistrate Judge designate a special master to conduct the initial review of the seized materials. Such a process, which was used in *Rivera*, would have provided a proper safeguard to prevent the improper disclosure of attorney-client materials.

For all the reasons stated above, all of the evidence seized pursuant to the search warrant should be suppressed under the Fourth Amendment and the "fruit of the poisonous tree" doctrine, *see Wong Sun v. United States*, 371 U.S. 471 (1963), as well as under the Fifth and Sixth Amendments.

In the alternative, Ms. Bandrich respectfully requests an evidentiary hearing concerning these issues.

## MOTION TO JOIN IN THE MOTIONS OF THE CO-DEFENDANTS

Ms. Bandrich respectfully seeks permission to join in the motions of her co-defendants in so far as those motions are not inconsistent with the motions advanced herein and so far as those motions are applicable to Ms. Bandrich.

### Conclusion

WHEREFORE, Ms. Bandrich respectfully requests that the Court grant her motions and grant such other and further relief that the Court may deem just and proper.

Dated:   New York, New York
         August 9, 2013

                                    Respectfully submitted,

                                    _____/S/_____
                                    SEAN M. MAHER
                                    SM 7568
                                    *Counsel for Defendant Vanessa Bandrich*
                                    The Law Offices of Sean M. Maher, PLLC
                                    233 Broadway, Suite 801
                                    New York, NY 10279
                                    (212) 661-5333

(212) 227-5808 fax

(212) 227-5808 fax